Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8669 | **DATE** | 5/29/2003 |
| **CASE TITLE** | OMRON HEALTHCARE, INC. vs. DOCTOR'S RESEARCH GROUP | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Status hearing held and continued to 6/18/03 at 9:00 a.m. Enter Memorandum Opinion And Order. Omron's motion to dismiss is denied. Omron's answer to be filed on or before 6/12/03.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 3 0 2003 date docketed | |
| ✓ | Docketing to mail notices. | | AR | 26 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OMRON HEALTHCARE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAY 3 0 2003 |
| v. | ) | |
| | ) | |
| DOCTOR'S RESEARCH GROUP, INC. and | ) | |
| RICHARD J. DESLAURIERS, | ) | |
| | ) | No. 02 C 8669 |
| Defendants. | ) | |
| ----------------------------------------- | ) | Judge John W. Darrah |
| | ) | |
| DOCTOR'S RESEARCH GROUP, INC. | ) | |
| | ) | |
| Defendant/Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OMRON RESEARCH GROUP, INC.; | ) | |
| KAZUO SAITO; JOHN WILSON; and | ) | |
| VINCE VIVERITO, | ) | |
| | ) | |
| Counterclaim-Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Omron Healthcare, Inc. ("Omron"), filed suit against Defendants, Doctor's Research Group, Inc. ("Research") and Richard J. Deslauriers ("Deslauriers"), alleging breach of contract, breach of warranty, fraudulent misrepresentation, and violation of the Illinois Franchise Disclosure Act. Subsequently, Research filed a Counterclaim against Omron, Kazuo Saito ("Saito"), John Wilson ("Wilson"), and Vince Viverito ("Viverito"), alleging breach of contract against Omron and fraud against all Defendants. Presently pending before the Court is Omron's Motion to Dismiss Count II of the Counterclaims.

A reading of Research's Counterclaim supports the following summary of the alleged

operative conduct of the parties as to Rescarch's counterclaims.

In early fall 2000, an Omron representative invited Deslauriers, President of Research, to visit Omron to discuss a potential distributorship relationship whereby Omron would sell certain Rescrach products. On October 10, 2000, Deslauriers attended a meeting with several Omron executives, including Saito, Wilson, Viverito. Omron represented that it was a multi-billion dollar enterprise which was in the process of expanding its business from selling lower quality, high volume, medical devices, to serving a higher quality market. Omron representatives also stated that Omron was prepared to invest millions of dollars in marketing and promotion in the sale of Research products. After the meeting, Omron provided Research with a list of approximately thirty dedicated Omron sales representatives throughout the United States, who Omron, through Wilson, represented to be seasoned Omron salespeople. Instead, those salespeople were independent contractors who sold medical devices and products for a variety of companies, one of which was Omron.

During the fall or winter of 2000, Research showed Omron several new products that Research was developing. Viverito and other Omron employees expressed enthusiasm about incorporating into Omron's product line devices that Research was developing. In connection with the distributor agreement, Omron requested a right of first refusal to add to its product line all new diagnostic products that Research developed.

Within a few months after entering into the distributor agreement, when Omron's sales failed to meet the levels forecasted in Omron's sales plan, Research learned that Omron did not have the promised direct sales force and that Omron relied upon independent contractors who sold medical devices and products for various other companies in addition to Omron. In

addition, Omron did not put into effect the promotional efforts that Omron described to Research before the distributor agreement was executed; and Research learned that Omron was not willing to commit the resources it had promised to the marketing of Research's products. Research later learned that, in many cases, Omron was selling Research's stethoscopes and related products at prices that were significantly higher than the prices suggested by Research. Research also learned that Omron's customer service was inadequate, causing purchasers to be dissatisfied with Omron.

In October 2001, Deslauriers initiated a business review meeting with Saito, Wilson, and Viverito. At this meeting, Saito reassured Deslauriers of Omron's commitment to establish itself as a premium medical device distributor, and reiterated that Omron envisioned Research's products playing a key role in that effort. Saito also committed to honoring Omron's purchase requirements under the distributor agreement.

In November 2001, it became clear to Research that Omron was not honoring its purchasing requirements; and Research sent Omron a notice of default. Omron informed Research that it was not going to meet its contractual purchase requirements for 2001 and 2002 and demanded changes to the distributor relationship with Research. Having committed significant resources, Research had no choice but to enter into an amended distributor agreement with Omron. Furthermore, both before and after entering into the distributor agreement, Omron had informed Research that it had a need for Research's innovative products; and Omron encouraged and monitored Research's efforts to develop new products. Because Research relied upon Omron's representations that Omron was a multi-billion dollar enterprise whose product mix would be enhanced by Research's products, Research changed the focus of its research and

development efforts to work on products that Omron did not yet have. Omron has failed to comply with its obligations under the distributor agreement and the amended distributor agreement.

Saito, Wilson, and Viverito were responsible for cultivating the distributorship relationship with Research and, at all times, established, supervised, directed and controlled the activities of Omron and its employees. Omron, Saito, Wilson, and Viverito made misrepresentations concerning its sales force and marketing and promotional plans regarding Research's products with knowledge that the misrepresentations were false. The Defendants made the misrepresentations with the specific intent that Research would rely upon the misrepresentations and omissions in making decisions.

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000) (*Marshall-Mosby*). A plaintiff is not required to plead the facts or the elements of a claim, with the exceptions found in Federal Rule of Civil Procedure 9. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002) (*Swierkiewicz*); *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). A filing under Federal Rule of Civil Procedure need not contain all the facts that will be necessary to prevail. It should be "short and plain", and it suffices if it notifies the defendant of the principal events. *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The simplified notice pleading relies upon liberal discovery and summary judgment motions to

define disputed issues and facts and to dispose of unmeritorious claims. *See Swierkiewicz*, 534 U.S. at 513.

However, "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). In order to survive dismissal, the plaintiff must plead the who, what, when, and where of the alleged fraud. *See Lachmund v. ADM Investor Serv., Inc.*, 191 F.3d 777, 782 (7th Cir. 1999) (quotations omitted). "The allegations must be specific enough to provide the defendants with a general outline of how the alleged fraud scheme operated and of their purported role in the scheme." *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 347 (N.D. Ill.1997) (citations omitted). To determine whether counts are sufficiently pled, a court will bear in mind the purposes of Rule 9(b): "(1) protecting the defendants' reputations; (2) preventing fishing expeditions; and (3) providing adequate notice to the defendants." *Rohlfing*, 172 F.R.D. at 347 (citing *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir.1994)).

Omron seeks dismissal of Count II, Research's fraud claim against all of the Counter-Defendants, contending that Research failed to adequately plead the requirements under Rule 9.

In the instant case, Research's allegations of fraud are limited to three named defendants. Research identifies specific meetings with these Defendants and the representations that were made at the specific meetings. While some of the alleged misrepresentations do not specify which of the three named Defendants made the misrepresentations, Research does specify certain statements by certain Defendants, *i.e.*, Wilson represented that Omron's salespeople were seasoned Omron salespeople; Saito reassured Deslauriers that Omron envisioned Research's products playing a key role in Omron's commitment to establish itself as a premium medical

5

device distributor. In light of the specific meetings, specific dates, and statements alleged in the Counterclaim, and the limited number of Defendants alleged to have made such statements, Research has sufficiently alleged the who, what, when, and where of the alleged fraud.

Omron also contends that Research has failed to state a claim for fraud. Omron argues that the alleged misstatements do not constitute fraud and Omron attempts to demonstrate that the allegations in the Counterclaim would not constitute fraud. However, at this stage of the litigation, the alleged misstatements, and the reasonable inferences from such misstatements, support a claim for fraud.

Omron also argues that the alleged misstatements were immaterial and are not tied to any damages or causation. However, Research need not plead or prove the elements of a fraud claim; and the Court cannot address the merits of the allegations at this stage of the litigation. *See Swierkiewicz*, 534 U.S. at 511, 513. Based on the allegations in the Counterclaim, Research has sufficiently pled a cause of action for fraud to place the Defendants on notice of the claims against them.

For the reasons stated above, Omron's Motion to Dismiss is denied.

Dated: May 29, 2003

JOHN W. DARRAH
United States District Judge